```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
THOMAS M. KELLY,                          :    12 Civ. 0628 (DLC)
                     Petitioner,          :    09 Cr. 163 (DLC)
                                          :
          -v-                             :    OPINION & ORDER
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                     Respondent.          :
------------------------------------------X
```

APPEARANCES:

For the petitioner:

Thomas M. Kelly, pro se
Reg. # 61413-054
201 Queensberry Court
Pittsburgh, PA 15237

For the Government:

Sarah Y. Lai
United States Attorney's Office
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

  Thomas M. Kelly ("Kelly") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Kelly entered a plea of guilty to fraud, was sentenced principally to a term of imprisonment of twenty-one months, and is currently on supervised release. For the following reasons, the petition is denied.

BACKGROUND

Kelly was the Executive Director for the Community for Education Foundation ("CEF"), a non-profit organization that provided materials and services designed to teach life skills to public school children.  Kelly diverted about $53,000, which a school district owed CEF, to an account in the name of the Downtown Jersey City Scholarship Fund (the "Fund").  Kelly controlled the Fund and withdrew the money for his own use and to lend to an acquaintance.

Kelly was arrested on September 23, 2008, and on February 20, 2009 was indicted for mail and wire fraud offenses.  Count Two, the wire fraud count to which Kelly pleaded guilty, reads in pertinent part:

> Between in or about 2006 and in or about March 2008, [Kelly] devised and carried out a scheme to fraudulently obtain money for himself from CEF by (i) diverting, through false representations, payments that were owed to CEF to a bank account that Kelly controlled and (ii) diverting most of the proceeds of those payments to his personal benefit.

Kelly executed a plea agreement with the Government dated July 27, 2009 (the "Agreement").  Among other things, the Agreement represented that the Government would not further prosecute Kelly for misuse of CEF's American Express card in consideration for his plea.  Kelly agreed to make restitution in the amount of $50,571.  Kelly waived the right to challenge any

sentence at or below 21 months' imprisonment, or to attack his conviction on the ground of a <u>Brady</u> violation.

On July 28, Kelly entered a plea of guilty. He indicated under oath that he was satisfied with his attorney and had had a sufficient opportunity to discuss with the attorney the charges, any defenses to those charges, and the consequences of a plea. Kelly was advised of his rights and acknowledged the principal terms of the Agreement, including the waiver of the right to challenge any sentence of 21 months' imprisonment or less.

The Court described the charge in Count Two by explaining <u>inter</u> <u>alia</u> that it charged Kelly

> With the crime of devising and carrying out a scheme to fraudulently obtain money for yourself through false representations, specifically by diverting payments that were owed to an entity called CEF, Community for Education Foundation. . . . [Y]ou diverted most of those proceeds for the payments for your own personal benefit. Do you understand that's the charge against you?

Kelly responded that he did understand that that was the charge against him.

Kelly allocuted shortly thereafter that

> I was employed as the executive director of the Community for Education Foundation. During the course of my employment I took money from Community for Education Foundation for my personal use, without proper authority or permission. In the course of taking this money I used a fax to accomplish that.

During colloquy with the Court, Kelly acknowledged that he had given instructions to a school district that it could send

money to CEF by wiring money to the Fund.  He did not inform the district that he was going to divert the money and that the money would be going to his "personal use."  Kelly said that "By wiring it [the money] into the account that it was wired into I represented to the outside party that it was going to CEF and not to my personal use."  When the Court asked, "[s]o, the instructions you gave in effect communicated to that party who owed CEF money or wanted to send money to CEF that it in fact would be going to CEF when you planned to divert it," Kelly responded, "That's correct."

Prior to sentence, defense counsel made written objections to the Pre-Sentence Report ("PSR").  He disputed the PSR's statement that no one at CEF, particularly its founder, was aware of a purported relationship between the Fund and CEF.  The Court scheduled a Fatico hearing for December 1.  On December 1, after extensive colloquy, Kelly withdrew all factual objections to the PSR and represented that there was no need for a Fatico hearing.

At the sentencing proceeding on December 4, Kelly represented that he had no permission to do what he did and that he had "violated the trust of people."  Kelly was sentenced to 21 months' imprisonment, to be followed by a term of three years' supervised release, and required to pay $100 as a special assessment and $94,767 in restitution.

Kelly appealed his conviction, arguing that the Court had failed to advise him that it could order him to pay restitution in an amount greater than described in the Agreement.  The appeal was summarily denied.  The Court of Appeals wrote that Kelly had "sufficient awareness of the relevant circumstance[s] and likely consequences" of his plea, including sentencing and restitution.  398 Fed.Appx. 665, 666 (2d Cir. 2010).

DISCUSSION

In support of his petition, Kelly has presented a five-page affidavit and two memoranda of law which make essentially five points.  These arguments largely stem from Kelly's assertion that he did have authority as the Executive Director of CEF to affiliate the Fund with CEF and therefore it was not a "misrepresentation" for Kelly to advise a school district that owed money to CEF to send that money to the Fund's bank account.  Kelly's five points are:

1) when Kelly represented at his plea that "by wiring it [the money] into the account that it as wired into I represented to the outside party [the school district] that it was going to CEF and not to my personal use," Kelly did not intend to admit that he had made any misrepresentation and that his admission of a misrepresentation during the plea allocution was a constructive amendment of the Indictment since the crime to

5

which he pleaded guilty did not require proof that he had made any misrepresentation;[1]

2) Kelly wanted to withdraw his plea because the PSR contained a description of conduct beyond that encompassed by his plea, and his attorney did not make such a motion;

3) Kelly's attorney should have sought a continuance and done further work in order to show that Kelly had authority in his role as Executive Director of CEF to open the Fund's bank account and treat it as a CEF account;

4) the Government failed to provide Kelly with CEF financial records and bank account information that would establish that the Fund's bank account was in fact a CEF account or at least that CEF was ultimately "credited" with the money deposited in the Fund's bank account and Kelly's attorney failed to raise this issue with the Court; and

5) Kelly's attorney failed to include in his appeal the argument that there was an insufficient factual predicate for the plea.

In opposing the petition, the Government has provided an extensive and helpful analysis of the deficiencies in Kelly's

---

[1] Kelly appears to argue both that (1) the Grand Jury believed that the bank account for the Fund was not a CEF account and that Kelly had false represented that the Fund's bank account was an account of CEF, and (2) that the Indictment did not encompass the misrepresentation to which Kelly admitted during his allocution.

petition. Its submission includes an affidavit from Kelly's retained counsel, who represented Kelly at his plea and on appeal. It is apparent, however, without the need to consult defense counsel's affidavit or conduct any hearing, that Kelly's petition fails on multiple grounds, including the following.

First, in his Agreement with the Government Kelly waived his right to argue that his Brady rights had been violated. Kelly does not suggest that the Agreement was not entered knowingly and voluntarily. Indeed, Kelly was questioned about those very issues at his plea and acknowledged that before he signed the Agreement he had both read it and discussed it with his attorney. See, e.g., United States v. Riggi, 649 F.3d 143, 150 & n.1 (2d Cir. 2011).

It should be noted, in any event, that the Government represents that it provided all pertinent records in its possession to the defendant. In addition, the existence of such bank records was known to Kelly and he never complained prior to the entry of his plea that he needed more time to obtain them or that the Government had failed to provide documents to him.

Finally, Kelly does not explain how any documents would exculpate him. He does not deny that he instructed the school district to wire the funds to the Fund, that he controlled the Fund's bank account, and that he used the money intended for CEF to pay personal expenses. Kelly confirmed these facts during

7

his plea allocution and a court is permitted rely upon the defendant's sworn statements in open court.  See United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir. 2001).

Next, Kelly's complaints about the plea allocution also fail.  Kelly was required to present any arguments addressed to the adequacy of the plea allocution on his direct appeal.  Massaro v. United States, 538 U.S. 500, 504 (2003).  Nor can he show that his attorney was ineffective for failing to do so.  The allocution was thorough and Kelly expressed satisfaction with counsel, his understanding of his rights, and his violation of the law as charged in Count Two.  Indeed, at his sentence, he reiterated that he had no permission to do what he did and had violated the trust that had been placed in him.  Appellate counsel cannot be faulted for failing to present frivolous arguments on appeal.  See Forbes v. United States, 574 F.3d 101, 106 (2d Cir. 2009).

Kelly appears to complain that the PSR described illegal conduct in which he engaged beyond that encompassed by his plea.  A conviction may not be vacated because the PSR describes conduct beyond that necessary to support the count of conviction.  Indeed, it is customary for a PSR to describe relevant conduct, and for that conduct to be evaluated in connection with the determination of an Offense Level for the Sentencing Guidelines calculation.  Moreover, Kelly was given

ample opportunity to point out any errors in the PSR, and was given an opportunity to participate in a Fatico hearing if he wished to press any disagreement with the PSR's description of his conduct.  After extensive colloquy with the Court, Kelly explicitly abandoned those disagreements and waived his right to that hearing on the day of the Fatico hearing.  Finally, in his petition Kelly does not identify any specific fact in the PSR with which he presently takes issue.

Nor has Kelly shown that his attorney was ineffective in failing to argue that Kelly had authority to treat the Fund's bank account as CEF's account.  During a lengthy colloquy with the Court on the day scheduled for the Fatico hearing, Kelly's counsel admitted that the founder of CEF "did not know that [the Fund] was affiliated or is in some way connected to CEF."  If that representation was in error, Kelly had an opportunity at that moment to correct his attorney and so advise the Court. But, more to the point, the crime to which Kelly pleaded guilty did not hinge on CEF's knowledge of or control over the Fund's bank account.  The critical issue was whether Kelly acted with fraudulent intent when he used funds destined for CEF for his personal use.  Kelly admitted that misconduct both at his plea and at his sentence.  There is, therefore, no basis on which to fault his attorney for any perceived failure to analyze the law regarding authorization more closely.

CONCLUSION

Kelly's petition for a writ of habeas corpus is denied.  In addition, the Court declines to issue a certificate of appealability.  Kelly has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted.  Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005).  The Court also finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 445 (1962).  The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         July 25, 2012

                                      _____
                                              DENISE COTE
                                      United States District Judge

COPIES MAILED TO:

Thomas M. Kelly
Reg. # 61413-054
201 Queensberry Court
Pittsburgh, PA 15237